UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

**LANCE PEROUTKA, NIKKI PRIBOW** and                                          :
**OTIS FUNG**, individually on behalf of themselves            :
and all others similarly situated,                                                 :

                                              Plaintiffs,                            :

                                                                                          :

          – against –                                                                  :

                                                                                          :

**YETI COOLERS, LLC**                                                          :

                                                                                          :

                                              Defendant.                            :

                                                                                          :
-------------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**
18-CV-6827 (AMD) (CLP)

**ANN M. DONNELLY**, United States District Judge:

On November 30, 2018, the plaintiffs filed a nationwide class action complaint against

the defendant, asserting false advertising claims under the laws of New York, Wisconsin, thirty-

nine other states and the District of Columbia. (ECF No. 1.) On April 12, 2019, the plaintiffs

filed an amended complaint. (ECF No. 17.) The defendant moved to dismiss the amended

complaint on multiple grounds, including a lack of personal jurisdiction over the Wisconsin

plaintiffs, lack of standing to seek injunctive relief and failure to state a claim under New York

and Wisconsin law. (ECF Nos. 18, 19.) The defendant moved in the alternative to transfer

venue to the Western District of Texas. (*Id.*) For the reasons that follow, I grant the defendant's

motion to transfer venue to the Western District of Texas.

## BACKGROUND[1]

The defendant is a manufacturer, marketer and distributor of outdoor lifestyle products with a principal place of business in Austin, Texas. (ECF No. 17 ¶¶ 3, 8, 43.) One of the defendant's products, the "Rambler Colster," is designed to keep drinks cold. (*Id.* ¶ 2.) The defendant markets the product as having a "Load-and-Lock Gasket" that "secures your drink in place," and claims that "[s]tandard 12 oz. cans and bottles fit like a glove – a glove with double-wall vacuum insulation." (*Id.* ¶¶ 8-10.)

Lance Peroutka and Nikki Pribnow, who live in Outagamie, Wisconsin, purchased the Rambler Colster online at Backcountry.com in October of 2015. (*Id.* ¶ 36.) They were attracted to the representations on the packaging that the product kept bottles and cans "securely in place" by virtue of the "Load-and-Lock Gasket." (*Id.* ¶¶ 37-38.) They soon discovered that standard-sized bottles fell out of the product, which caused "several close calls and accidents." (*Id.* ¶ 39.)

Otis Fung, a resident of Brooklyn, New York, purchased the Rambler Colster on April 20, 2019, from Amazon.com. (*Id.* ¶ 40.) He was also attracted to the claims that the product would hold bottles and cans securely. (*Id.* ¶ 41.) Soon after he purchased the product, Fung placed a "standard 12 oz. bottle of beer" in it, and the bottle "slipped from the Product." (*Id.*) He claims that this was "not an isolated instance." (*Id.*)

The plaintiffs claim that the Rambler Colster does not hold "the majority of beer bottles used in the United States," including Bud Light, Coors Light, Budweiser, Michelob Ultra Light, Natural Light, Busch Light and Busch. (*Id.* ¶ 13.) The plaintiffs claim that they paid a "premium" for the product because they believed that it was safe and technologically advanced.

---

[1] For purposes of this motion, I accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiffs' favor. *See Town of Babylon v. Fed. Hous. Fin. Agency,* 699 F.3d 221, 227 (2d Cir. 2012).

(*Id.* ¶ 8.) The plaintiffs say that they would not have paid the same amount for the product had they known about its shortcomings. (*Id.* ¶ 42.)

The plaintiffs assert six causes of action, include statutory consumer protection claims under the laws of New York, Wisconsin, thirty-nine other states and the District of Columbia (Counts 1-3, 5), as well as claims for intentional misrepresentation (Count 4) and breach of express warranty (Count 6).[2] The defendant moves to dismiss for lack of personal jurisdiction, lack of standing and failure to state a claim. In the alternative, the defendant moves to transfer this case to the Western District of Texas.

## DISCUSSION

"[W]here motions to dismiss for lack of personal jurisdiction and venue are joined with a motion to transfer, the transfer motion may be considered first." *Kai Wu Lu v. Tong Zheng Lu*, No. 04-CV-1097, 2007 WL 9723258, at *2 (E.D.N.Y. July 12, 2007) (citations omitted), *aff'd*, 2007 WL 2693845 (E.D.N.Y. Sept. 12, 2007). Moreover, if a court finds that transfer is appropriate, it should defer decision on any dispositive motions to allow the transferee court to consider the merits of the case. *Id.* at *3 (citing *Lyon v. Cornell Univ.*, No. 97-CV-7070, 1988 WL 226193, at *2 (S.D.N.Y. May 4, 1998) (collecting cases in which courts transferred venue and withheld decisions on pending motions "when doing so would allow the transferee court to decide important issues that are critical to the disposition of the case")).

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any district or division where it might have been brought . . . " "[M]otions for transfer lie within the broad discretion of the

---

[2] The plaintiffs agreed to drop claims for strict liability misrepresentation (Count 8), negligent misrepresentation (Count 9), and violation of the Magnuson-Moss Warranty Act (Count 7). (ECF No. 22 at 1.)

district court and are determined upon notions of convenience and fairness on a case-by-case basis." *Aldiono v. I.K. Sys., Inc.*, No. 18-CV-6781, 2019 WL 4887655, at *2 (E.D.N.Y. Sept. 30, 2019) (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)) (citation omitted).  The purpose of the transfer statute is to "prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation omitted).

Deciding a motion to transfer involves a two-part inquiry: "(1) whether the action could have initially been brought in the transferee court; and (2) whether the interests of justice and convenience of the parties and witnesses will be served by the transfer." *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872, at *5 (E.D.N.Y. Sept. 22, 2015) (citing *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 398 (E.D.N.Y. 2013); *Forjone v. California*, 425 F. App'x 73, 74 (2d Cir. 2011)).  Courts evaluate the "interests of justice and convenience of the parties and witnesses" taking into account a combination of the following factors:  "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *Forsher v. J.M. Smucker Co.*, No. 15-CV-7180, 2019 WL 235639, at *3 (E.D.N.Y. Jan. 16, 2019) (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006)).

The moving party bears the burden of demonstrating that "the transfer is justified," *Xiu Feng Li v. Hock*, 371 F. App'x 171, 175 (2d Cir. 2010), and in deciding a motion to transfer, courts must apply the "clear and convincing evidence standard" while "operat[ing] with considerable discretion," *Stoltz*, 2015 WL 5579872, at *5 (citing *Forjone*, 425 F. App'x at 74).

The parties stipulate that the case could have been brought in the Western District of Texas. (ECF No. 22 at 15.)  The defendant argues that the case should be transferred there because Yeti's corporate headquarters, employees (current and former) with relevant knowledge, and business records are all in Texas.  (ECF No. 19 at 21-25.)  The defendant also claims that Texas is the locus of operative facts because the Colster was designed, labeled and produced there.  (*Id.* at 23-24.)  The plaintiffs respond that their choice is entitled to deference and that the defendant has not met its burden to justify transfer.  (ECF No. 22 at 15-20.)

### 1.  The Plaintiffs' Choice of Forum

As a general rule, "a plaintiff's choice of forum is presumptively entitled to substantial deference."  *Gross v. British Broad. Corp*, 386 F.3d 224, 230 (2d Cir. 2004) (citation omitted).  However, "while the Second Circuit has not definitely answered what effect a plaintiff's representative capacity has on his or her choice of forum, it has acknowledged that a plaintiff's choice of forum is entitled to less deference in the context of national class actions."  *Stoltz*, 2015 WL 5579872, at *6 (quoting *Gilstrap v. Radianz Ltd.*, 233 F. App'x 83, 85 (2d Cir. 2007) and *Warrick ex rel. Warrick v. Gen. Elec. Co.*, 70 F.3d 736, 741 n.7 (2d Cir. 1995)) (citation omitted).  The presumption in favor of the plaintiff's choice is further eroded when "there is little material connection between the chosen forum and the facts or issues of the case."  *Forsher*, 2019 WL 235639, at *3 (citation omitted).

This case has one connection to New York: one of the three named plaintiffs in a nationwide consumer class action is from Brooklyn.[3]  Moreover, Texas, not New York, is the locus of operative facts in the case.  Therefore, the plaintiffs' choice to pursue this nationwide consumer class action in the Eastern District of New York deserves minimal deference.

---

[3]  The plaintiff did not buy the Colster in the Eastern District of New York; he bought it on Amazon.com, a website that is equally accessible everywhere.

## 2. Convenience of Witnesses

"Convenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 30 (E.D.N.Y. 2014) (citation omitted). "The weight given to the convenience of witnesses depends upon whether the party seeking transfer has described the witnesses' testimony so the court can qualitatively evaluate its materiality." *Excellent Home Care Servs., LLC v. FGA, Inc.*, No. 13-CV-05390, 2014 WL 652357, at *3 (E.D.N.Y. Feb. 19, 2014) (citations omitted). The moving party may submit an affidavit explaining why the transferee forum is more convenient and can include "the potential principal witnesses expected to be called and the substance of their testimony." *Stoltz*, 2015 WL 5579872, at *7.

The defendant identifies, and describes the expected testimony of, fourteen likely witnesses—three current employees, eight former employees and three consultants—all of whom reside in the Austin, Texas area. (ECF No. 20 ¶¶ 10-13.) According to the defendant, these witnesses will testify about the Colster's design, engineering, testing, branding, marketing and labeling, topics which are clearly relevant to the plaintiffs' allegations that Yeti's statements about the Colster were false and deceptive. (*Id.*)

The plaintiffs characterize the relevance of these witnesses' testimony as "overblown" because "the issue in this case is how reasonable consumers would interpret Defendant's advertising." (ECF No. 22 at 17-18.) But the plaintiffs' pleadings suggest otherwise. First, the plaintiffs assert an intentional misrepresentation claim, which requires establishing that the company "made the misrepresentation with the intent to deceive." (ECF No. 17 ¶ 92.) Second, in their false advertising and consumer fraud claims, the plaintiffs allege that the company *knew* that its statements were false. (ECF No. 17 ¶ 76: "Defendant made its untrue and/or misleading

statements and representations willfully, wantonly, and with reckless disregard for the truth"; *Id.* ¶ 101: "Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth."). The bulk of the plaintiffs' claims requires proving the defendant's state of mind, which can only be established by the testimony of the employees. *See also Forsher*, 2019 WL 235639, at \*4 ("Indeed, Plaintiff's false advertising and deceptive acts and practices claims 'are best addressed by the party witnesses directly involved in the [labeling decisions, actions, and statements] of the products in question.'") (citation omitted). The plaintiffs do not identify material witnesses in New York other than Mr. Fung. Accordingly, this factor weighs in favor of transfer.

### 3. Location of Relevant Documents

"In an era of electronic documents, easy copying and overnight shipping, the location of relevant documents assumes much less importance than it did formerly." *Stoltz*, 2015 WL 5579872, at \*8 (citation and alterations omitted). To weigh in favor of transfer, the moving party cannot merely state that relevant documents are located in the transferee forum—it must establish that it would be unable to move or copy its documents easily. *Id.* (quoting *Royal Ins. Co. of Am. v. Tower Records, Inc.*, No. 02-CV-2612, 2002 WL 31385815, at \*6 (S.D.N.Y. Oct. 22, 2002) ("[A] defendant's assertion that documents are located in the proposed transferee forum is entitled to little weight unless the defendant makes a detailed showing as to the burden it would incur absent transfer.")). The defendant argues only that the "electronic and physical records relating to YETI's design and marketing of the Colster are managed from YETI's headquarters" in Texas. (ECF No. 19 at 23.) Because the defendant has not established that it would be burdensome to transport the design and marketing records from Texas to New York, this factor is neutral.

#### 4.  Convenience of the Parties

"A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer." *Stoltz*, 2015 WL 5579872, at *8 (citations omitted).  The defendant argues that litigating the case in this district would be highly burdensome for its employees and that a transfer to the Western District of Texas would burden only one of three named plaintiffs in a putative nationwide class action. (ECF No. 19 at 24.)  The plaintiffs say that transferring this case to the Western District of Texas would merely shift the inconvenience to Mr. Fung.  (ECF No. 22 at 16-17.)

Mr. Fung avers that transferring this case to the Western District of Texas would be so inconvenient that it would preclude him from litigating the case.  (ECF No. 24 ¶ 2.) Nevertheless, because this is a nationwide class action, the majority of the plaintiffs will have to travel to the forum whether this case is tried in New York or Texas.  In other words, inconvenience for some of the plaintiffs is unavoidable.  Moreover, the other two named plaintiffs and counsel for the plaintiffs are in Wisconsin, and will have to travel to the forum in any event.

The defendant has demonstrated that the Eastern District of New York is inconvenient for it and no more convenient than the Western District of Texas for the majority of named and unnamed plaintiffs.  But because the defendant has not expressly addressed the relative inconvenience to Mr. Fung in the event of a transfer, I find that this factor is neutral.  *See Stoltz*, 2015 WL 5579872, at *8 (". . . the convenience of the parties is a neutral factor given Defendants' failure to address the extent to which Plaintiffs would be inconvenienced if this case was transferred to the Northern District of New York.").

### 5. Locus of Operative Facts

"The location of the operative events is a primary factor in determining a section 1404(a) motion to transfer." *Billing v. Commerce One, Inc.*, 186 F. Supp. 2d 375, 377 (S.D.N.Y. 2002). "To ascertain the locus of operative facts, courts look to 'the site of the events from which the claim arises.'" *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 460 (E.D.N.Y. 2013) (citation omitted). The defendant argues that the locus of operative facts is Austin, Texas because its corporate headquarters are there, the Colster was designed there, and "executives and third parties made strategic decisions about the marketing, labeling, and sale of the Colster" there. (ECF No. 19 at 23.) The plaintiffs argue that the loci of operative facts are New York and Wisconsin, where the named plaintiffs used the Colster and discovered its faults. (ECF No. 22 at 19.)

As explained above, the process by which the Colster and its packaging were designed and evaluated will be relevant to the plaintiffs' intentional misrepresentation, consumer fraud and false advertising claims. "Therefore, the [Western District of Texas] is likely to be the locus of many, though certainly not all, operative facts." *Stoltz*, 2015 WL 5579872, at \*9 (citing *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 21 (S.D.N.Y. 2012) (noting that the plaintiff "has alleged willfulness which will presumably turn, in large part, on facts regarding the design and development of the accused products and packaging and the knowledge of the employees involved in that process")). The sites at which the plaintiffs purchased the Colster and discovered its defects will also be relevant to the plaintiffs' claims, but in the context of nationwide class actions, where the purchase sites are spread across all fifty states, courts identify the producers' headquarters as the "main locus of operative facts." *See Forsher*, 2019 WL 235639, at \*6 ("[B]ecause this is a putative class action brought on behalf of a California class *and* a multi-state class, ultimately 'the loci of the operative facts involving Plaintiffs are

spread across . . . allegedly, all fifty states,' whereas 'the *main* locus of operative facts as to

Defendant is [its headquarters] in the Northern District of Ohio.") (citation omitted); *Horanzy v.*

*Vemma Nutrition Co.*, 87 F. Supp. 3d 341, 349 (N.D.N.Y. 2015) ("Based on these claims, the

locus of many operative facts would be defendants' headquarters in Arizona, with the remaining

fact spread out in all states where Vemma has member-distributors (allegedly, all fifty of

them).") (citation omitted). Accordingly, this factor favors transfer.

### 6. Availability of Process

The parties have not alleged that their expected non-party witnesses would be unwilling

to testify in the Eastern District of New York, so this factor has no bearing on the analysis and is

neutral.[4] *See Stoltz*, 2015 WL 5579872, at *10.

### 7. Relative Means of the Parties

A disparity of means does not weigh in the plaintiffs' favor unless they "offer

documentation to show that transfer would be unduly burdensome to [their] finances."

*Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 31 (S.D.N.Y. 2016). Although Mr. Fung states that

transferring this case to Texas would impose a great financial hardship on him, the plaintiffs do

not offer any evidence of his financial condition, nor the financial condition of the Wisconsin

plaintiffs. Accordingly, this factor is neutral. *See Stoltz*, 2015 WL 5579872, at *10 ("Plaintiffs

have not established that this factor weighs against transfer because Plaintiffs fail to offer any

evidence as to their financial condition."); *Federman Assocs. v. Paradigm Med. Indus., Inc.*, No.

96-CV-8845, 1997 WL 811539, at *4 (S.D.N.Y. Apr. 8, 1997) (no undue hardship because the

plaintiff's statements about its financial means, including that a transfer might be the "death

knell of the action," were conclusory and offered without supporting documentation).

---

[4] The defendant's witnesses say that it would be inconvenient to travel to New York for trial (ECF Nos.
20, 21), but do not say that they would be unwilling to do so.

### 8. Additional Factors

The parties discuss a range of additional factors militating in favor or against transfer, including the relative caseloads of courts in the two districts and the courts' familiarity with the governing law. Although the parties briefed the issue of personal jurisdiction for the defendant's motion to dismiss, they have not discussed its relevance for the transfer analysis.

Courts have concluded that "it conserves judicial resources, and furthers the interests of the parties, to transfer a case from a forum in which there is a difficult question of personal jurisdiction or venue to a district in which there are no such uncertainties." 15 Wright & Miller, *Federal Practice and Procedure* § 3854 (4th ed. 2019); *see also WorldCare Ltd. Corp. v. World Ins. Co.*, 767 F. Supp. 2d 341, 365 (D. Conn. 2011) ("Transfer is favored to remove procedural obstacles including the lack of personal jurisdiction."); *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993) ("[The] functional purpose of 28 U.S.C. § 1406(a) is to eliminate impediments to the timely disposition of cases and controversies on their merits."); *Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 80 (2d Cir. 1978) (transfer held in the interest of justice where one result was that it "would apparently enable appellant to obtain personal jurisdiction over some or all of the defendants"); *Kai Wu Lu*, 2007 WL 9723258, at *5 (transferring case in part because "this Court most likely lacks personal jurisdiction over three of the defendants").

In *Bristol-Myers Squibb Company v. Superior Court of California*, 137 S. Ct. 1773, 1780 (2017), the Supreme Court held that California lacked specific jurisdiction over non-California plaintiffs' mass tort claims because the conduct giving rise to their claims did not occur in California. That the non-residents' claims were similar in character to the residents' claims, over

11

which the California forum had personal jurisdiction, was not a sufficient basis for exercising

specific personal jurisdiction over claims lacking any connection to the state. *Id.*

*Bristol-Myers* appears to bar this Court from exercising specific jurisdiction over the

Wisconsin plaintiffs' claims.[5]  The Wisconsin plaintiffs allege violations of Wisconsin law

arising from the defendant's activities in Wisconsin—in other words, they have alleged no

"connection between the forum and [their] specific claims at issue." *Bristol-Myers*, 136 S. Ct. at

1781. The plaintiffs nevertheless argue that this Court should assert "personal, pendent

jurisdiction" over the non-New York claims notwithstanding *Bristol-Myers*.  (ECF No. 22 at 10-

11.)  "[U]nder the doctrine of pendent personal jurisdiction, where a federal statute authorizes

nationwide service of process, and the federal and state claims 'derive from a common nucleus

of operative fact,' the district court may assert personal jurisdiction over the parties to the related

state law claims even if personal jurisdiction is not otherwise available." *IUE AFL-CIO Pension*

*Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993) (internal citation omitted).  Because the

plaintiffs are not suing under any federal statute, the doctrine of personal pendent jurisdiction is

inapplicable to this case.

The likelihood that this Court cannot exercise specific personal jurisdiction over the

defendant for claims by non-residents unrelated to the defendant's activities in New York weighs

strongly in favor of transfer to Texas—a state in which the defendant is subject to general

personal jurisdiction. *See generally Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014).

---

[5] "Lower courts have divided over whether the *Bristol-Myers* decision applies with equal force to class actions." 4 Wright & Miller, *Federal Practice and Procedure* § 1067.2 (4th ed. 2015).  At least one court in this district has held that it does, noting that the "constitutional requirements of due process does not wax and wane when the complaint is individual or on behalf of a class." *In re Dental Supplies Antitrust Litig.*, No. 16-CV-696, 2017 WL 4217115, at \*9 (E.D.N.Y. Sept. 20, 2017); *see also Spratley v. FCA US LLC*, No. 17-CV-0062, 2017 WL 4023348, at \*6-7 (N.D.N.Y. Sept. 12, 2017) (dismissing non-resident plaintiffs' claims in a class action for lack of personal jurisdiction because they showed no connection between their claims and the defendant's contacts with the forum state).

Having considered the parties' arguments and each of the relevant factors, I find that the interests of justice weigh convincingly in favor of transfer.

### CONCLUSION

For the reasons discussed above, I grant the defendant's motion to transfer to the Western District of Texas and defer decision on the defendant's motion to dismiss.  Pursuant to Local Civil Rule 83.1, the Clerk will, after seven days, effectuate the transfer of the case to the Western District of Texas.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
March 17, 2020